In the Matter of the Estate of ADELMA R. MAXSON, Deceased. LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Appellant-Respondent; THEODORE W. ROTH, Doing Business as MISSING HEIRS INTERNATIONAL, Respondent-Appellant. ABRAHAM D. LEVY, as Public Administrator of Bronx County, et al., Respondents. (Proceeding No. 1.)

In the Matter of the Estate of BENJAMIN BEDOTSKY, Deceased. LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Appellant-Respondent; THEODORE W. ROTH, Doing Business as MISSING HEIRS INTERNATIONAL, Respondent-Appellant; ABRAHAM D. LEVY, as Public Administrator of Bronx County, et al., Respondents. (Proceeding No. 2.)

First Department, February 22, 1979

**APPEARANCES OF COUNSEL**

*Laurence Reinlieb* for respondent-appellant.

*Frank I. Strom, II,* of counsel *(Samuel A. Hirshowitz* with him on the briefs; *Louis J. Lefkowitz, Attorney-General),* for appellant-respondent.

**OPINION OF THE COURT**

SILVERMAN, J.

These are cross appeals by the Attorney-General and the claimant from so much of the decrees of the Surrogate's Court, Bronx County, in each of the two above-named estates as allowed compensation for services to claimant Theodore W. Roth, doing business as Missing Heirs International. The claimant contends that the amount allowed is inadequate; the Attorney-General contends that there should have been no allowance to claimant. We agree with the Attorney-General.

Claimant, as his trade name indicates, is engaged in the business of finding missing heirs to estates. If and when he finds such heirs he reveals their good fortune to the heirs on their agreement to compensate him, usually in the amount of 50% of their inheritance.

Each of the present cases involves a dormant savings bank account, which the bank was about to pay to the Comptroller of the State of New York as abandoned property pursuant to section 303 of the Abandoned Property Law. Before paying such abandoned property to the Comptroller, the banks are required to make and publish a list of the abandoned accounts. (Abandoned Property Law, §§ 301, 302.)

In the present cases, claimant, in accordance with his usual practice, obtained copies of those lists. In one case he obtained it from the bank with the request from the bank that he try to find the owner of the accounts or their heirs. In the other case he apparently saw the list in the newspaper. He ascer-

tained that the depositors were dead but was unable to locate any distributees or persons beneficially interested in the accounts. He thereupon notified the Public Administrator of Bronx County who assumed control of the funds and administered the estates. No distributees were discovered but nevertheless claimant sought and was granted compensation for his services in ascertaining that the depositors (or other beneficiaries named in the accounts) were dead and in notifying the public administrator of the existence of these unadministered estates.

Claimant did not render his services at the request of anyone beneficially interested in the estate, and claimant was under no legal or moral obligation to engage in his activities in the absence of such request; nor does claimant have any agreement for compensation. It follows that an indispensable prerequisite in his being compensated from the estates is a showing that he has conferred some benefit.

The Surrogate found such benefit in the fact of administration of the estates, even though no distributees have been discovered. We think that this is too insubstantial a benefit to warrant compensating claimant. Particularly is this true where as here these accounts and estates appear to have remained unadministered for 10 to 20 years after decedents' death with nobody the worse for it (except as to funeral expenses discussed below).

If claimant had not intervened, these accounts would have been paid over to the State Comptroller to be held for the benefit of the unknown persons who might be beneficially entitled thereto ("protecting the interest of the owners thereof," Abandoned Property Law, § 102) or, in the event that no such person appeared, for the benefit of the State. (Cf. Abandoned Property Law, §§ 103, 1405, 1406.) Now that the claimant has intervened and the estates have been administered, the balances of the funds have been deposited with the Commissioner of Finance of the City of New York (SCPA 1123, subd 2, par [h]), who will turn the assets over to the State Comptroller after five years should they remain unclaimed (Abandoned Property Law, § 600, subd 1), for the benefit of the persons—still unknown—who may be beneficially entitled thereto or, in the event that no such persons appear, for the benefit of the State (cf. SCPA 2222; Abandoned Property Law, § 103). The only substantial difference that claimant's intervention has made is that the amounts so paid

and held will now be depleted by the expense of administration, including claimant's compensation.

There is a qualification on the foregoing—the reflection of the proverbial inevitabilities, death and taxes—i.e., funeral expenses and estate taxes:

In the Maxson estate, the decedent died in 1956. There appears to have been no claim in the estate for a funeral bill, but $81 was paid for New York State estate tax (perhaps indicating that as between two certainties, taxes are the more certain). This $81 tax to New York State is hardly a benefit to the State, since in all likelihood it was to receive the whole estate as abandoned property. If the State revenue authorities wish to pay commissions to help them locate assets out of which the State can collect taxes, that is a matter for the revenue authorities acting pursuant to statutes governing their jurisdiction. It seems unlikely that the State would really be interested in paying a commission of over 500% (tax, $81; allowance to claimant, $450).

In the Bedotsky estate in which the decedent died in 1964, the accounting indicates a New York State estate tax of $151, a 1974 funeral bill to Harry Moskowitz of $640, and a payment to a monument company of $500. The allowance to the claimant was $600. The circumstances as to the incurring of the funeral bill, who incurred it and whether the funeral director and the monument company received any assurance of payment at the time the obligations were incurred, are not set forth in the record. With respect at least to the funeral bill of $640, it seems possible that Mr. Moskowitz would not have been paid the $640 if it had not been for the administration of this estate, and to that extent the administration did confer a tangible benefit on someone. Claimant is a volunteer not acting from emergency or necessity and has no agreement with Mr. Moskowitz or anyone else for compensation for his services. Indeed, there is no indication that claimant located Mr. Moskowitz. We think on balance that it is better not to impose on estates generally the burden of compensation for services such as claimant has rendered, at least where no distributees are discovered.

Claimant is engaged in a speculative business—that of finding missing heirs. When he finds such heirs and makes a satisfactory agreement with them, his speculation turns out well. When he is not successful and does not find the heirs, we

think it not unfair that he should not be compensated. As the Surrogate pointed out, "Advising the Public Administrator of an account does not become an aspect of claimant's efforts until all other possible profit from knowledge of the account is exhausted."

We do not pass on a situation in which there may be a clear showing of concrete and substantial benefit due to claimant's activities.

In Matter of Maxson, the decree, Surrogate's Court, Bronx County (LEONFORTE, J., upon decision of GELFAND, S.), entered August 17, 1976, should be reversed, on the law and the facts, to the extent appealed from by the Attorney-General and the provision for compensation to claimant should be stricken, with one bill of costs.

In Matter of Bedotsky, the decree, Surrogate's Court, Bronx County (GELFAND, S.), entered November 9, 1976, should be reversed, on the law and the facts, to the extent appealed from by the Attorney-General and the provision for compensation to claimant should be stricken, with one bill of costs. In both cases, the cross appeals of claimant are dismissed as academic, without costs.

SANDLER, LANE and MARKEWICH, JJ., concur; KUPFERMAN, J. P., dissents and would affirm on opinion of GELFAND, S.

Decree, Surrogate's Court, Bronx County, entered on August 17, 1976, reversed, on the law and the facts, to the extent appealed from by the Attorney-General and the provision for compensation to claimant stricken. Respondent-cross-appellant shall recover of respondent-appellant $75 costs and disbursements of this appeal.

Cross appeal of claimant is dismissed as academic, without costs and without disbursements.

Decree, Surrogate's Court, Bronx County, entered on November 9, 1976, reversed, on the law and the facts, to the extent appealed from by the Attorney-General and the provision for compensation to claimant stricken. Respondent-cross-appellant shall recover of respondent-appellant $75 costs and disbursements of this appeal. Cross appeal of claimant is dismissed as academic, without costs and without disbursements.