In the Matter of the Estate of EDWARD DEVLIN, Deceased. THE
MARKHAM COMPANY RESEARCH SERVICES, INC., Appellant;
FRANCES SVAIGSEN, PUBLIC ADMINISTRATOR, Respondent.

Second Department, September 28, 1992

**APPEARANCES OF COUNSEL**

*Jaspan, Ginsberg, Ehrlich, Schlesinger & Hoffman,* Garden City *(Eugene P. Cimini, Jr., Alice J. Brady* and *Alice J. Hollmuller* of counsel), for appellant.

*Rocco M. Longo,* Jamaica *(Risi & Santospirito [John A. Santospirito]* of counsel), for respondent.

**OPINION OF THE COURT**

RITTER, J.

■ ■ We are asked to decide whether the Surrogate is empowered to review the reasonableness of a fee first proposed by a so-called "heir locater" firm and agreed to by the distributee of an unclaimed estate. We hold that the Surrogate has such a power and that it was properly exercised in this case by reducing the fee from 40% of the estate to approximately 15%.

An agreement was entered into between The Markham Company Research Services, Inc. (hereinafter Markham), a business that provides heir locator services, and Catherine Devlin Nordt, who was unaware that she was the sole heir of the estate of Edward Devlin. In consideration of a negotiated fee, Markham was directly responsible for Nordt's next-of-kin (hereinafter the distributees) recovering the unclaimed assets of the Devlin estate. According to the agreement, Markham

was entitled to a substantial fee—approximately $389,000—calculated as a percentage of the nearly $983,000 value of the Devlin estate. Such a fee represented approximately 40% of the total estate. We hold that SCPA 2112 authorizes the Surrogate to reduce the fee because the agreement at issue constitutes either an assignment of a portion of Ms. Nordt's interest in the Devlin estate within the purview of EPTL 13-2.3, or it is a power of attorney for Markham to act on behalf of the distributees. Either step confers jurisdiction on the Surrogate to review the reasonableness of the negotiated fee.

## I

Markham is engaged in the business of locating owners of unclaimed assets on behalf of corporations, banks, attorneys representing estates, and other persons or entities subject to the laws dealing with abandoned property. Normally, as in the case at bar, Markham is compensated based on a negotiated percentage of the value of any unclaimed property recovered on behalf of the rightful owner, or the owner's heirs.

In or about April 1986, Burlington Northern Railway, Inc., provided Markham with a list of missing shareholders which included the name of Edward Devlin, the owner of approximately $28,000 worth of stock. Markham's initial investigation conducted by its president, Edward Goldfader, revealed that Devlin had died intestate in 1984. The Public Administrator, appointed to handle the Devlin estate, had been unable to locate any heirs. Markham offered to provide its services to the Public Administrator, but its offer was declined. However, the Public Administrator voiced no objection to Markham continuing its own efforts to locate unknown heirs.

Goldfader then conducted an extensive search of various public records, some dating back as much as 100 years, and interviewed friends, neighbors, employees, and others acquainted with Edward Devlin. He determined that Devlin had been a wealthy man, and was survived by a paternal cousin, Catherine Devlin Nordt. Because Ms. Nordt was 98 years old and lived in a nursing home, Goldfader decided to contact her two adult children, Mary McDowell and Albert Nordt, in order to offer Markham's services in recovering unclaimed assets belonging to the heirs of the Devlin estate.

During their initial discussions, Goldfader did not disclose the expected value or source of the unclaimed property.

However, at his urging, Mary McDowell and Albert Nordt obtained a general power of attorney from their mother. Thereafter, as her attorneys-in-fact, they executed the contingent fee agreement that is the subject of this appeal. There is no issue raised concerning the validity of the power of attorney given by Ms. Nordt, or the authority of her attorneys-in-fact to enter into the agreement with Markham.

Under the terms of the agreement, Markham's fee was calculated on a sliding scale: 50% of the first $100,000 of net property recovered, 45% of the next $400,000, and 35% of any amount over $500,000. Markham further agreed to pay all legal expenses and other costs incurred in order to establish the entitlement of Catherine Devlin Nordt (or her heirs) to the unclaimed property.

Catherine Devlin Nordt died on March 30, 1988, and letters of administration were issued to her two adult children. Following a kinship hearing, the Surrogate's Court determined that Catherine Devlin Nordt had in fact been the sole heir of Edward Devlin. A decree was issued authorizing payment of the net proceeds of the Devlin estate to Mary McDowell and Albert Nordt as fiduciaries and heirs of their mother's estate. As a result of this proceeding, the court also became aware of the existence of the contingent fee agreement and ordered a hearing to determine the reasonable value of the services provided by Markham.

The evidence adduced at the hearing established that the amount of the fee Markham earned under the terms of the agreement, approximated to be $389,000, was approximately $14,000 more than the net amount ($375,000) which Ms. Nordt's distributees were expected to recover after deduction of taxes and the cost of administration. Both Mary McDowell and Albert Nordt testified that they were satisfied with the services provided by Markham and felt its fee was reasonable. Nevertheless, the Surrogate found that the fee was unconscionable and reduced it to $120,000 plus out-of-pocket expenses and attorney's fees of $25,975.50; Markham was further directed to return any amount already paid in excess of $120,000 with 6% interest computed from the day payment was received to the date of repayment.

On appeal, Markham contends that the Surrogate's Court did not have jurisdiction over the contingent fee agreement, or alternatively, that its fee under the agreement was reasonable. We do not agree with Markham's contentions.

## II

■ The Surrogate's Court had subject matter jurisdiction over the estate of Edward Devlin and was empowered to effect a complete disposition of the matter before it by making such order or decree as justice requires (SCPA 201 [3]; *Matter of Piccione,* 57 NY2d 278; *Matter of Kummer,* 93 AD2d 135, 165-166). In furtherance of that power, we hold that the contingent fee agreement, executed on behalf of Catherine Devlin Nordt by her attorneys-in-fact, constitutes an instrument within the purview of EPTL 13-2.3 (a).

In relevant part, EPTL 13-2.3 (a) provides: "(a) Every power of attorney relating to an interest in a decedent's estate and every conveyance or assignment of an interest in an estate, or similar instrument, which contains an express or implied authorization or delegation of power to act thereunder shall be in writing and acknowledged or proved in the manner prescribed by the laws of this state for the recording of a conveyance of real property and, subject to the rules or order of the surrogate hereinafter provided, shall be recorded in the office of the surrogate granting letters on such decedent's estate or, if no such letters have been granted, in the office of the surrogate having jurisdiction to grant them. Such recording confers on the surrogate jurisdiction over the grantor of such power of attorney, the attorney in fact therein named and any other person acting thereunder". The statute provides further that the Surrogate may, pursuant to the provisions of SCPA 2112, fix and determine the validity and reasonableness of the compensation earned by any person acting under a power of attorney or other instrument described in subdivision (a), whether or not the same have been previously fixed by agreement and whether or not fixed in the instrument so recorded, or otherwise (EPTL 13-2.3 [b] [3]). In the exercise of its authority to review such compensation the court may, if it determines that such person has already been paid or received a sum in excess of the reasonable value of his services, direct him to refund the excess. A proceeding therefor may be commenced by the court on its own initiative (SCPA 2112 [1], [2]).

The legislative history of EPTL 13-2.3 describing the purpose for which it was enacted supports our holding that the agreement at bar was properly subjected to judicial scrutiny by the Surrogate.

The source of the present statute is Personal Property Law

former § 32-a. That provision, originally enacted in 1935 *(see,* L 1935, ch 203), was repealed as part of the 1966 revision of the Estates, Powers and Trusts Law (EPTL 14-1.1 [a]) and reenacted in the same year without substantive change as EPTL 13-2.3 *(see,* 6th and Final Report of Temp St Commn on Estates, 1967 NY Legis Doc No. 19, Appendix L, at 250). The original bill was introduced in 1935 to address concerns about the business practices of corporations and persons who provided services for exorbitant fees under powers of attorney secured from foreign heirs of decedents *(see, Lorisa Capital Corp. v Gallo,* 119 AD2d 99, 107; *Matter of Lynch,* 154 Misc 260). Case law applying Personal Property Law former § 32-a confirms that its primary purpose was to " 'curtail the abuses that might arise between persons acting under a power of attorney and their principals' " *(Matter of Robinson,* 52 Misc 2d 163, 164, *affd on opn of Surrogate* 30 AD2d 702; *see, Matter of Bargel,* 5 Misc 2d 657, 659, *affd* 7 AD2d 645). Thus, the legislative history and decisional law support a conclusion that EPTL 13-2.3 was intended to protect distributees in the Surrogate's Court from practices which unduly diminish their undistributed interests in estates *(see, Lorisa Capital Corp. v Gallo, supra,* at 108).

Analysis of the way Markham's fee was calculated, and the type of services it agreed to provide, leads us to find that the agreement is, in substance, both a power of attorney and an assignment of a portion of the distributee's interest in the Devlin estate, or a similar instrument which authorizes Markham to act on behalf of Ms. Nordt. Our holding that the agreement herein constitutes an instrument enumerated in EPTL 13-2.3 is based on a liberal construction of the statute in order to effectuate its remedial purpose. Additionally, we conclude the agreement falls within the scope of the Surrogate's review powers even though it was not properly acknowledged, and recorded, as required by the statute.

The purpose of the recording requirement is to give notice to subsequent assignees of the interest in the estate *(see, Matter of Bihn,* 171 Misc 80). Markham's failure, whether deliberate or unintended, to have the agreement recorded cannot serve as a basis to defeat the court's subject matter jurisdiction over the instrument. If this were not so, the remedial purpose of the statute would too easily be thwarted *(see, Matter of Robinson, supra,* at 166; *see also, Matter of Kraus,* 144 Misc 2d 34, 37).

## III

Having concluded that the agreement at bar is subject to judicial scrutiny under EPTL 13-2.3 and SCPA 2112, we now turn to the question of whether the court properly reduced Markham's fee in determining the reasonable value of the services provided.

■ We observe that courts have carefully scrutinized the type of business engaged in by Markham (see, 18 NY Jur 2d, Champerty and Maintenance, § 5; Annotation, *Heir-hunting*, 171 ALR 351), and in particular, have condemned the practice employed here in which the heir locator retains counsel at its own expense to represent the interests of the distributees (see, *Matter of Lynch, supra; cf., Matter of Tuthill*, 256 App Div 539). Here, however, Markham's services clearly conferred a substantial benefit upon the distributees and they voiced no objection to its negotiated fee. Markham was therefore entitled to be compensated for the valuable services it provided, but only to the extent that its fee was reasonable (see, *Matter of Maxson*, 66 AD2d 635, 637; *Matter of Bellinger*, 55 AD2d 448, 451).

Even though the distributees expressed satisfaction with the results obtained by Markham, the court was not bound to approve the amount of the fee fixed by the terms of the agreement (see, *Matter of Bargel, supra* [reducing contingency fee of attorney employed by attorney-in-fact under terms of retainer agreement]; *see also, International Tracers of Am. v Estate of Hard*, 89 Wash 2d 140, 570 P2d 131). The determination of reasonable compensation under SCPA 2112 requires consideration of various factors. The relevant factors are comparable to those involved in a determination of reasonable compensation for an attorney providing services for a person interested in an estate (SCPA 2110; see, *Matter of Freeman*, 34 NY2d 1), and those used in calculating a reasonable fee for a guardian ad litem in a conservatorship proceeding (see, *Matter of Stark*, 174 AD2d 746) because the services are so similar. Thus, the Surrogate was required to consider the difficulty of the matters involved and the skill needed to handle the problems presented, the time and labor required, the experience of the person providing the services, fees awarded for similar services, and the amount of the benefits conferred.

Markham contends that the agreed-upon fee was reasonable based on the extent of the services performed, and the level of expertise and experience involved. In support of this conten-

tion, Markham refers to Goldfader's testimony that he personally devoted 1,000 to 2,000 hours on this matter during a period of over two years and other employees spent at least 1,000 hours assisting him. We observe that Markham did not provide any written time records or other documentation to substantiate the number of hours it claims was devoted to this matter.

The record reveals that the Surrogate properly considered Goldfader's testimony and all the relevant factors in determining the reasonable value of the services provided by Markham. The court was not required to accept the unsubstantiated claims with respect to the number of hours spent by Markham working on this case (see, Matter of Schaich, 55 AD2d 914).

A further consideration that the Surrogate may properly take into account when deciding this issue is the fee cap established by Abandoned Property Law § 1416. The statute, enacted in 1980, was a legislative effort to specifically regulate the activities of locator businesses like Markham. The sponsoring memorandum of the Department of Audit and Control explains the purpose of the law as follows:

"In the processing of claims for recovery of abandoned property, this Department has noted the activities of a number of persons who allegedly conduct businesses the purpose of which is to locate the owners of such property. While businesses of this type are not illegal, many of the practices of persons operating these businesses are unfair and unreasonable, and serve to exploit the property owners.

"This bill would provide protection to the property owners, by regulating the agreement under which the locator acts on behalf of the property owner" (Legis Bill Jacket, L 1980, ch 173).

Under the statute, no agreement to locate abandoned property shall be valid if it provides for the payment of a fee greater than 15% of the value of recoverable property (Abandoned Property Law § 1416 [2]). Abandoned Property Law § 1416 is not applicable to property passing through an estate unless the person entitled to a legacy or a distributive share is unknown at the time the Surrogate's final decree is issued. In such a case, payment of the unclaimed fund must be made to the State Comptroller to be held as abandoned property pursuant to SCPA 2222 (Abandoned Property Law § 103 [b]; see also, Matter of Kraus, 144 Misc 2d 34, supra). Here, the

Devlin estate did not escheat to the State because the sole surviving heir was located prior to issuance of the Surrogate's final decree. However, the 15% cap of the Abandoned Property Law may be considered by the Surrogate as one of the several factors in arriving at the reasonable amount of compensation to be awarded to the locator in this case. We note that the reduction of Markham's fee from $389,000 to $120,000 plus out-of-pocket expenses and attorney's fees awarded by the Surrogate was approximately 15% of the Devlin estate.

In summary, we conclude that the reduction of Markham's fee was a proper exercise of discretion and well within the court's mandate under SCPA 2112. Accordingly, the order is affirmed insofar as appealed from.

BALLETTA, J. P., MILLER and COPERTINO, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs payable by The Markham Company Research Services, Inc.