[888 NYS2d 732]

In the Matter of PUBLIC ADMINISTRATOR OF WESTCHESTER COUNTY, as Administrator of the Estate of ANNIE ROLLINS, Deceased.

Surrogate's Court, Westchester County, October 23, 2009

---

### APPEARANCES OF COUNSEL

*Schuman Sall & Geist*, White Plains (*Brandon Sall* of counsel), for petitioner. *Miesha L.M. Rodriguez*, Hopewell Junction, guardian ad litem. *Jarrett G. Roth*, New York City, for Venio LLC, Formerly Known as Jaisan, Inc.

### OPINION OF THE COURT

ANTHONY A. SCARPINO, JR., S.

In this uncontested proceeding to settle his final account, the Public Administrator requests the following: to allow commissions and fees for professional services; to allow Venio LLC, formerly Jaisan, Inc. (hereinafter referred to as Venio), a 15% finder's fee for locating abandoned and unclaimed assets; to allow the claim of the Westchester County Department of Social Services (DSS); and to direct distribution of the balance of the estate, if any, to the Comptroller of the State of New York for the benefit of decedent's unknown distributees.

Decedent died on February 12, 1998 a resident at the Regency Extended Care Center, Yonkers, New York. Prior to her death, an article 81 property guardian had been appointed for decedent. In May 2005, Venio informed the Public Administrator of decedent's death and that it had located assets in her name. Letters of administration issued to the Public Administrator on October 7, 2005.* Thereafter, the Public Administrator located an alleged maternal first cousin once removed who has not appeared in this proceeding.

The Public Administrator collected four assets: the proceeds of a guardianship account in the amount of $59,370.87; an unclaimed savings account with JPMorgan Chase in the amount of $44,240.50 (the Chase account); abandoned funds held by the Comptroller which were previously held in an account at Bank of New York in the amount of $144.79; and abandoned funds held by the Comptroller which were previously held in a bank account at JPMorgan Chase in the amount of $64,269.58.

At the time Venio notified the Public Administrator of decedent's death, it sought a finder's fee equal to 15% of the Chase unclaimed funds and subsequently sought a 15% fee for

---

\* The petition recites November 13, 2006 as the date when letters issued.

locating funds held with the Comptroller. There is no written agreement between Venio and the Public Administrator for the payment of a finder's fee, nor have the terms of the alleged oral agreement been established. It is noteworthy that in his petition the Public Administrator seeks approval of the finder's fee but does not admit the existence of an agreement. The requested fee is shown on an amended schedule C-1 (unpaid administration expenses) of the account.

Venio maintains that notwithstanding the absence of a written agreement, the court should allow it a finder's fee because its services benefitted the estate. It suggests that a benefit may inure to the alleged first cousin once removed if the distributee is able to establish his status, or alternatively to DSS as a creditor of the estate. Additionally, Venio argues that the fee should be allowed because no objections have been raised to its payment.

The court rejects Venio's latter contention. Because the Public Administrator seeks approval of the requested finder's fee in his petition and account, the lack of objections does not preclude the court from examining its propriety. It is well settled that the Surrogate has the inherent authority to inquire into the contents of an account and petition and to determine any matter therein (*Matter of Stortecky v Mazzone*, 85 NY2d 518 [1995]; *Matter of Devlin*, 182 AD2d 322 [1992]; *Matter of Hawwa A.*, 9 AD3d 362 [2004]). Moreover, SCPA 2211 (1) provides that in a voluntary accounting proceeding, upon the return of process, "the court must . . . make such order or decree as justice shall require."

Under the circumstances of this matter, the court concludes that it is particularly appropriate to review the agreement, despite the absence of objections.

Fee agreements by a fiduciary have historically been subject to judicial scrutiny (*Matter of Stortecky v Mazzone*, 85 NY2d 518 [1995]; *Matter of Devlin*, 182 AD2d 322 [1992]; *Greenpoint Bank v Criscione*, 23 Misc 3d 1106[A], 2009 NY Slip Op 50604[U] [2009]; *see also* SCPA 2112). A pertinent example is found in *Devlin* where the Appellate Division, Second Department, considered the Abandoned Property Law relevant to its analysis of whether a fee agreement between an administrator and an heir locator was fair and reasonable. There, the Court discussed the purpose underlying Abandoned Property Law § 1416, enacted in 1980, as follows:

> "The statute . . . was a legislative effort to specifi-

cally regulate the activities of locator businesses
. . . . The sponsoring memorandum . . . explains
the purpose of the law as follows:

" 'In the processing of claims for recovery of
abandoned property, this Department has noted the
activities of a number of persons who allegedly
conduct businesses the purpose of which is to locate
the owners of such property. While businesses of
this type are not illegal, many of the practices of
persons operating these businesses are unfair and
unreasonable, and serve to exploit the property own-
ers.

" 'This bill would provide protection to the property
owners, by regulating the agreement under which
the locator acts on behalf of the property owner' "
(*Matter of Devlin*, 182 AD2d at 329 [citation omit-
ted]).

The Appellate Division went on to hold in *Devlin* that the 15%
cap under Abandoned Property Law § 1416 was a factor for the
Surrogate to consider when fixing the fee of the heir locator.

The legislative purpose in support of Abandoned Property
Law § 1416 is relevant to the issue here. This court must evalu-
ate the reasonableness of an oral finder's fee agreement and, in
doing so, should consider whether the personal representative
has been exploited.

██ The law is clear with respect to the abandoned funds. An
oral agreement to pay a finder's fee for locating assets held by
the Comptroller is invalid. Under Abandoned Property Law
§ 1416 (1), in order for an agreement to locate property held by
the Comptroller to be valid it must: (a) be in writing and signed
by the property owner; (b) disclose the nature of the property;
and (c) disclose the name and address of the holder. Subdivision
(2) of Abandoned Property Law § 1416 further provides that
such agreement shall not be valid if it fixes a finder's fee in
excess of 15%, which percentage shall include any and all fees
associated with locating and collecting such funds, including
legal fees (*see Greenpoint Bank v Criscione*, 23 Misc 3d 1106[A],
2009 NY Slip Op 50604[U] [2009]). As indicated, Venio does not
have a written agreement with the Public Administrator. Ac-
cordingly, pursuant to Abandoned Property Law § 1416 (1), the
request to pay Venio a finder's fee for locating abandoned funds
held with the Comptroller is denied.

The law concerning the Chase account is less clear. Subdivi-
sion (1) (a) of section 300 of the Abandoned Property Law

provides that bank deposits left unclaimed for more than five years are deemed abandoned. Following the passage of the five-year period, the holding bank is required to turn the funds over to the Comptroller. In such event it would appear that Abandoned Property Law § 1416 would apply to void an oral agreement to pay a finder's fee. However, under article 6 of the Abandoned Property Law, certain notice requirements to the holder must be met before a bank account is abandoned. The record here is insufficient for the court to determine whether the notice requirements were met. The issue then is whether the court should allow Venio a finder's fee for locating the unclaimed Chase account where there is no written agreement.

The absence of a written agreement between a personal representative and asset locator, which discloses both the nature of the property and the holder of the account, places the personal representative in an untenable position. The personal representative is without any bargaining power. In such case, the asset locator demands a fee regardless of whether the personal representative had prior knowledge of the existence of the asset.

Moreover, without disclosure, a personal representative cannot reasonably assess whether there is any purpose to seeking letters of administration. For example, where decedent's distributees are not known, the "located" funds collected by the Public Administrator which are not necessary to pay claims would be deposited with the Comptroller. In such case, the only persons benefitting from the collection of the "located" assets would be the asset locator, the attorney for the Public Administrator, and the Public Administrator in the form of commissions. Under such circumstance, the Public Administrator may not be justified in seeking letters.

An interested party is also disadvantaged because he or she must evaluate whether the personal representative acted prudently or imprudently by agreeing to pay a finder's fee without benefit of knowing, or being able to discover, any of the terms of the agreement. For these reasons, the absence of a written agreement which discloses the nature of the property and the name and address of the holder is a significant factor for the court in determining whether to allow a finder's fee.

Conversely, the existence of a written agreement which satisfies the disclosure requirements of Abandoned Property Law

§ 1416 ensures a level playing field between a personal representative and the asset locator and provides a probable basis for the court to issue letters. The personal representative would then be positioned to protect the interests of the distributees, or beneficiaries, and creditors of the estate who in turn would have a basis for evaluating the personal representative's conduct.

The existence of a written agreement would also preclude the application of the statute of frauds. Section 5-701 (a) (10) of the General Obligations Law provides that an agreement which involves a promise to pay compensation for services rendered in negotiating a loan, purchase, sale, exchange or business opportunity is void unless it is in writing. It is well settled that General Obligations Law § 5-701 (a) (10) applies to an agreement to pay a finder's fee (*Intercontinental Planning v Daystrom, Inc.*, 24 NY2d 372 [1969]; *Kubin v Miller*, 801 F Supp 1101 [1992]; *Futterman Org. v Bridgemarket Assoc.*, 278 AD2d 105 [2000]; *Murray Director Affiliates v Laventman*, 70 Misc 2d 571 [1972]). The general purpose underlying this section is to protect parties who are sued for alleged promises informally made and prevent their use as instruments of extortion (*see Intercontinental Planning v Daystrom, Inc.*, 24 NY2d 372 [1969]), a serious concern of this court.

Arguably, the Public Administrator has impliedly admitted to the oral agreement which would remove it from the application of the statute of frauds (General Obligations Law § 5-701 [b] [3] [c]). No such exception is provided under the Abandoned Property Law (*see Greenpoint Bank v Criscione*, 23 Misc 3d 1106[A], 2009 NY Slip Op 50604[U] [2009]). Applying the public policy underlying Abandoned Property Law § 1416, this court does not recognize an exception to the requirement that an agreement to pay a finder's fee for locating unclaimed funds must be in writing. Moreover, even where a finder's fee agreement is in writing and satisfies the requirements of Abandoned Property Law § 1416, the fee remains subject to the court's review (*see Matter of Devlin*, 182 AD2d 322 [1992]) whether the services benefitted the estate as compared to recycling the funds back to the Comptroller's office.

Based upon all of the foregoing, the court finds that an oral agreement to pay a finder's fee for locating unclaimed funds is invalid. Accordingly, the request to allow the finder's fee to Venio for locating the Chase account is denied.

Turning to the requested legal fees, a determination of the reasonableness of professional fees awarded in an estate matter is within the sound discretion of the Surrogate's Court (SCPA 2110; *Matter of Graham*, 238 AD2d 682 [1997]). In determining the reasonableness of legal fees, consideration has been given to the relevant factors, including: (i) the size of the estate; (ii) the difficulty of the questions presented; (iii) the skills required; (iv) the attorney's experience, ability and reputation; (v) the responsibilities involved; and (vi) the benefit resulting to the estate from the services rendered (*Matter of Freeman*, 34 NY2d 1 [1974]; *Matter of Potts*, 213 App Div 59 [1925], *affd* 241 NY 593 [1925]).

Counsel's services include: preparation and filing of an administration proceeding; conducting a search for distributees; and the preparation and filing of the pending proceeding. The court finds the requested fee fair and reasonable. Based upon the foregoing, the attorney's fee is fixed in the total amount of $9,677.50 for all services rendered and to be rendered through settlement of the decree and distribution thereunder; such fee shall include any fees paid, or to be paid, for preparation of fiduciary tax returns other than those reflected in the account. The accountant's requested fee in the amount of $850 is allowed.

The court is also asked to fix the fee of the guardian ad litem. The determination of the reasonableness of attorney's fees is within the sound discretion of the Surrogate's Court (*see* SCPA 2110; *Matter of Graham*, 238 AD2d 682 [1997]; *Matter of Ault*, 164 Misc 2d 272 [1995]). The guardian ad litem spent 15.1 hours at the rate of $250 per hour for a total of $3,775. Her services include a review of the account and preparation of her report. Based upon the foregoing, the court fixes the guardian ad litem's fee in the reduced amount of $1,825.

Commissions (SCPA 2307 [1]) and costs (SCPA 1207 [4]) shown on the account are approved.

The remaining portions of the account are approved. Petitioner is authorized to set aside a reserve in the amount of $1,000 for the payment of fiduciary income taxes and bond premiums. No portion of such reserve shall be used for the payment of additional professional fees.

Accordingly, after paying outstanding administration expenses petitioner shall distribute the net estate to the Westchester County Department of Social Services. In the event the assets exceed the claim of DSS, then the balance shall be deposited

with the Comptroller for the benefit of decedent's unknown distributees.

Upon making payments as set forth herein the account is approved, petitioner is released and the bond is discharged.