OPINION OF THE COURT
Rita M. Mella, S.
Introduction
These three identical applications were commenced by Salvatore A. Diliberto, Esq., as attorney-in-fact for three distributees of decedent John Holland, and seek to withdraw funds currently being held by the Office of the New York State Comptroller for the benefit of each of these distributees. Unlike the typical withdrawal proceeding in which entitlement to such funds must be proved (SCPA 2222 [2]), here, prior to the issuance of the decree settling the account of the administrator of *174 decedent’s estate, the court made a determination as to who were the distributees entitled to share in the estate and the amount of their distributive shares. The decree then directed that payment of the portion of the estate funds payable to these three distributees be deposited in their names with the Commissioner of Finance of the City of New York until further order of this court. After holding the funds for the requisite period of time, the Commissioner turned them over to the Comptroller (Abandoned Property Law § 602 [1]).
Along with these petitions, the limited powers of attorney executed by the distributees and appointing Mr. Diliberto to serve as their agent, as well as the accompanying rule 207.48 affidavit addressing Mr. Diliberto’s compensation, were recorded and filed with the court (Uniform Rules for Sur Ct [22 NYCRR] § 207.48 [a] [2]; see EPTL 13-2.3 [a]). Annexed to these documents are the identical compensation agreements that these three distributees have signed, which provide Mr. Diliberto a sum equal to 15% of the portion of decedent’s estate that is distributable to these three distributees.
Respondents, the Public Administrator for New York County (PA), and the New York State Attorney General (AG) (individually and on behalf of the Comptroller) have raised no objection to the withdrawal of these funds and their payment to the three distributees, but have interposed objections to the compensation of Mr. Diliberto for his services in these matters.
For the reasons that follow, the application is granted in part, as provided below, and Mr. Diliberto is directed to provide an affidavit of legal services and time records for the services performed, in compliance with rule 207.45 (a), as codified at Uniform Rules for Surrogate’s Court (22 NYCRR) § 207.45 (a).
Background
A. The Estate of John Holland
Decedent John Holland died in the attacks on the World Trade Center on September 11, 2001. The PA served as administrator of his estate, which consisted primarily of proceeds from the September 11th Victim Compensation Fund (VCF). Following a kinship hearing, this court determined that the decedent was survived by four non-marital, minor children, Dujon Jerome Holland, Ty-Shawn Jerrod Ward, Trent Joneall Ward (the three distributees herein represented by Mr. Diliberto) and Bryanna Holland, as his distributees. Subsequently, the Special Master of the VCF determined the award amounts *175 for decedent’s four children,[1] and, by decision of this court on June 14, 2005, distribution in accordance with that determination was approved.[2]
While Bryanna Holland’s mother was appointed guardian of her property, so that her portion of the VCF award could be distributed to a guardianship account for her benefit, no one petitioned and qualified to serve as guardian of the property for Dujon Holland, Ty-Shawn Ward, or Trent Ward.[3] As a result, as aforementioned, the decree settling the account of the PA directed that the shares payable to these three distributees, who were all still minors, be deposited with the Commissioner of Finance of the City of New York to be held for their benefit.[4] In 2011, the Commissioner paid the funds for these three distributees (all three having reached the age of majority) to the Comptroller.[5] (Abandoned Property Law §§ 600, 602.) According to the Comptroller, the amounts on deposit in April 2011 were: for Dujon Holland: $359,775.67, plus interest accrued; for Ty-Shawn Ward: $346,598.23, plus interest accrued; and for Trent Ward: $296,074.29, plus interest accrued.
B. Petitions by Decedent’s Distributees
Mr. Diliberto now has filed these three identical petitions, each consisting of three unnumbered pages, along with an accompanying two-page affirmation in support, requesting the withdrawal of these funds for the distributees. As aforementioned, these three distributees conferred limited powers of attorney upon Mr. Diliberto, allowing him to act as their attorney-in-fact to protect their respective rights in the property and estate of John Holland, including making the instant applications.
Mr. Diliberto’s initial rule 207.48 affidavit stated that each distributee “signed an agreement with [his] firm to pay fees in *176 the sum of 15% of the net distributable estate of John Holland that is paid to [that distributee] to [Mr. Diliberto’s] firm as legal fees” (Diliberto’s aff pursuant to Uniform Rules of Sur Ct [22 NYCRR] § 207.48, June 4, 2013, f 6 [emphasis added]). The court estimates that these contingency fee agreements would provide Mr. Diliberto with compensation in excess of $150,000.
C. Compensation to Mr. Diliberto and/or Diliberto Probate Research LLC
In response to the instant petitions, the PA filed an affirmation asserting no opposition to the petitions but objecting to the 15% contingency fee to be received by Mr. Diliberto’s firm. The PA argued that the fee was excessive and that the court has the inherent power to supervise fees for legal services, as well as those of attorneys-in-fact, and asked the court to fix and determine the validity and reasonableness of Mr. Diliberto’s fees. Mr. Diliberto then filed an affirmation dated September 18, 2013, arguing that Abandoned Property Law governs his firm’s entitlement to fees as well as this court’s authority to review such compensation and not the law relating to compensation of attorneys or attorneys-in-fact. Additionally, Mr. Diliberto filed an amended rule 207.48 affidavit, which he claims corrects errors in the earlier one. In it, Mr. Diliberto states that each distributee signed “a retainer agreement with [his] firm to pay fees in the sum of 15% of the abandoned property” payable to that distributee to Mr. Diliberto’s firm, “which sums shall pay fees and disbursements, as set forth in said retainer.” After directing the court’s attention to the retainer agreements described below, Mr. Diliberto argued that without his intervention, the distributees would not have become aware of these funds, and that arbitrarily reducing his fee would have a chilling effect on the valuable services performed by asset locators. Also included with Mr. Diliberto’s September 2013 submissions are affidavits from each of the three distributees stating that they agree to Diliberto Probate Research LLC (DPR) and Mr. Diliberto receiving this 15% compensation and relaying their belief that without DPR, these substantial funds may have been lost to them forever.
While initially the AG filed an answer interposing no objection to the relief requested in the petitions, that office supplemented the answer with a letter to the court, which stated that these fee agreements were invalid under Abandoned Property Law § 1416, as they were not acknowledged pursuant *177 to section 1416 (3) (a) (iv), and lacked the requisite disclosure language provided for in section 1416 (3) (d).[6] The court provided Mr. Diliberto with an opportunity to respond to this contention. In a memorandum of law filed with the court on March 27, 2014, Mr. Diliberto maintains, in an apparent contradiction to his previous position, that the requirements under section 1416 identified by the AG do not apply to these fee agreements because the services that he provided were in the nature of practicing law and could only be performed by an attorney (see Abandoned Property Law § 1416 [2] [a]).
D. The Agreements
Each distributee entered into two agreements with Mr. Diliberto and/or DPR, an heir and asset locator firm. The retainer agreements with Mr. Diliberto are signed by him and the respective distributee, and indicate that his services as attorney have been retained to represent the distributees in these withdrawal proceedings, and provide for compensation for the attorney of 15% of the assets payable to each distributee. These retainer agreements further state that the attorney is responsible for paying all fees including those due or to be incurred by DPR from his 15% contingency fee. The agreements with DPR (DPR agreements) appear to predate the retainer agreements with Mr. Diliberto and are signed solely by the distributees, while one is “witnessed” by an unidentified individual. The DPR agreements agree to provide DPR with 15% of the assets recovered for the distributees as payment for DPR’s services. Neither the DPR agreements nor those entered into with Mr. Diliberto are acknowledged.
Discussion
Section 13-2.3 of the Estates, Powers and Trusts Law, which mandates that any power of attorney relating to an interest in a decedent’s estate meet certain requirements, including being in writing and acknowledged or proved, and further directs that such instrument be recorded in the ap *178 propriate surrogate’s court, was enacted “to protect distributees in the Surrogate’s Court from practices which unduly diminish their undistributed interests in estates” (Matter of Devlin, 182 AD2d 322, 327 [2d Dept 1992]; see Matter of Bargel, 5 Misc 2d 657, 659 [Sur Ct, Richmond County 1957], affd 7 AD2d 645 [1958], lv denied 5 NY2d 710 [1959] [addressing section 231-b of the Surrogate’s Court Act, predecessor to the SCPA, and Personal Property Law § 32-a, from which this section of the EPTL derives, and referencing Matter of Garrity, 164 Misc 910 (Sur Ct, NY County 1937)]). Recording the powers of attorney “confers on the surrogate jurisdiction over the grantor of such power . . . the attorney in fact therein named and any other person acting thereunder” (EPTL 13-2.3 [a]). The statute further provides that
“[t]he surrogate may: . . .
“(2) Inquire into and determine the validity of every such instrument and require proof of the amount of compensation or expenses charged or to be charged by the attorney in fact and every person acting thereunder [;] [and]
“(3) [i]n a proceeding authorized by SCPA 2112 or in any appropriate proceeding, fix and determine the validity and reasonableness of such compensation and expenses, whether or not the same have been previously fixed by agreement and whether or not fixed in the instrument so recorded, or otherwise.” (EPTL 13-2.3 [b] [2], [3].)
Similarly, SCPA 2112, as formerly contained in sections 231-b and then 231-c of the Surrogate’s Court Act (see L 1963, ch 288, eff Apr. 16, 1963 [renumbering what was § 231-b as § 231-c]), was codified for the purpose of “curtailing] abuses that might arise between persons acting under a power of attorney and their principals” (see Matter of Bargel at 659; see also Matter of Robinson, 52 Misc 2d 163, 164 [Sur Ct, Kings County 1966], affd in part and dismissed in part 30 AD2d 702 [2d Dept 1968], appeal dismissed 22 NY2d 938 [1968]), and it vests in the Surrogate’s Court the authority and responsibility to fix and determine compensation and expenses of a person acting under a power of attorney. Although not identical, this review power has been likened to that of attorney compensation pursuant to SCPA 2110. The court may exercise this power at any time during the administration of an estate, and irrespective of the pendency of any proceeding, and may review and determine *179 the reasonableness of such compensation either on application by the fiduciary or a person interested or on its own initiative, whether or not compensation has been previously fixed by agreement (SCPA 2112 [1]; Matter of Pia, 21 Misc 2d 464, 469-470 [Sur Ct, NY County 1959] [referencing public policy reflected in Surrogate’s Court Act requiring the court to fix compensation for attorneys-in-fact]) and even where the parties have agreed on a fee and the grantor of the power of attorney — or the parties to a proceeding in which counsel’s fee is to be fixed — has not objected to said fee (Matter of Devlin, 182 AD2d at 325; see Matter of Gomez, 5 Misc 3d 534, 538 [Sur Ct, NY County 2004] [holding, in context of assessing reasonableness of fees of attorneys representing the estate, that “lack of opposition . . . cannot deter the court from inquiring into the reasonableness of a fee that is questionable on its face”]; see also Matter of Talbot, 84 AD3d 967, 968 [2d Dept 2011] [“In a proceeding pursuant to SCPA 2110 . . . the Surrogate bears the ultimate responsibility of deciding what constitutes a reasonable legal fee, regardless of the existence of a retainer agreement or whether all of the interested parties have consented to the amount . . . requested”]).
In the context of attorneys-in-fact performing “abandoned property location services,” the provisions of Abandoned Property Law § 1416, which address restrictions on agreements to locate and/or retrieve abandoned property, will be read in conjunction with EPTL 13-2.3 and SCPA 2112. That section broadly defines “abandoned property location services” to include “any service for a fee providing assistance to consumers for the purposes of locating and/or retrieving property held by the comptroller pursuant to this chapter” (Abandoned Property Law § 1416 [1]) and provides requirements for any agreement for such services (§ 1416 [3], [4]). Agreements that fail to comply with these requirements are not valid, unless this section does not apply under one of the exceptions enumerated (§ 1416 [2]). Amongst those for which the requirements of section 1416 do not apply are a “client’s agreement with an attorney . . . where . . . the services in question can only be performed by an attorney.” (Abandoned Property Law § 1416 [2] [a].) No further explanation of this exception is provided.
Two main arguments are advanced by Mr. Diliberto to circumvent review of his compensation in these matters: (1) that the court has no power in these circumstances under SCPA 2112 because decedent’s estate is fully administered; and (2) *180 that the retainer agreements are exempt from the requirements of Abandoned Property Law § 1416 by virtue of their covering services that can only be performed by an attorney. Each argument is addressed in turn.
It is without question that EPTL 13-2.3 and SCPA 2112 confer upon this court jurisdiction to review and evaluate the reasonable compensation for an attorney-in-fact who is presently petitioning before this court under the auspices of a power of attorney recorded in the court (Matter of Garrity, 164 Misc at 911 [statutes providing Surrogate’s Court with power to fix proper compensation of attorneys-in-fact should be construed broadly to effect purpose for which enacted]; see Matter of Betlem, 300 AD2d 1026, 1027 [4th Dept 2002]; see also Matter of Kraus, 144 Misc 2d 34 [Sur Ct, Queens County 1989]). Mr. Diliberto’s argument to the contrary is unavailing. Without a doubt, this court’s jurisdiction and authority to fix and determine compensation certainly extend to withdrawal proceedings commenced in this court that require a determination of kinship. That the court has already in this case made a determination as to these three individuals’ entitlement to the funds now on deposit with the Comptroller is of no material consequence, and by no means leads to the conclusion that these proceedings are wholely outside of the administration of decedent’s estate such that SCPA 2112 would not apply. Supporting the conclusion that the instant proceedings are a final step in the disposition of decedent’s estate is the fact that this court’s August 2005 decree on the accounting by the PA directs the funds for the benefit of each of these distributees deposited “until further order of this court.” In addition, Mr. Diliberto’s authority to act on behalf of his clients in these proceedings to withdraw funds derives from the recording of powers of attorney (EPTL 13-2.3), which in turn grants the court authority to review, pursuant to section 2112, the reasonableness of his fees (see Matter of Nunno, 161 Misc 707, 710 [Sur Ct, Richmond County 1937]).
The applicability of Abandoned Property Law § 1416 does not impair the court’s power to review an agreement regarding compensation, as Mr. Diliberto asserts. This is decidedly so if, as Mr. Diliberto also argues, his retainer agreement with the distributees is exempt from the Abandoned Property Law § 1416 requirements because it is an agreement between clients and counsel for the performance of legal services. The unequivocal purpose underlying enactment of Abandoned Property *181 Law § 1416 was to “ ‘provide protection to the property owners, by regulating the agreement under which the locator acts on behalf of the property owner’ ” (Matter of Rollins, 26 Misc 3d 642, 645 [Sur Ct, Westchester County 2009] [citations omitted]). Certainly, the purpose behind any exception to section 1416 was not to immunize attorneys and leave their clients without the protections provided by the statute. In any event, section 1416 cannot be read to preempt the requirements of EPTL 13-2.3 and SCPA 2112 or prevent the review of powers of attorney recorded in the Surrogate’s Court.
The old aphorism applies. Mr. Diliberto may not have his cake and eat it too. Either he performed services as an attorney and attorney-in-fact — that, under such circumstances, are specifically subject to this court’s scrutiny under SCPA 2112 — or the fee agreements signed by the distributees are those of the nature covered by section 1416 and thus must meet the requirements of section 1416 (3). Importantly, Mr. Diliberto does not dispute that neither the retainer agreements nor the DPR agreements are acknowledged by a notary public (Abandoned Property Law § 1416 [3] [a] [iv]) and that they fail to make the required “clear and conspicuous” disclosure, “in at least twelve-point boldface type” (Abandoned Property Law § 1416 [3] [d]).[7]
Thus, the court need not decide whether, as Mr. Diliberto argues, the retainer agreements are exempt from the section 1416 requirements under subdivision (2) (a), because they relate to services that may only be performed by an attorney. Instead, taking Mr. Diliberto at his word, the court determines that the agreements, particularly to the extent that they provide for Mr. Diliberto’s compensation, continue to be subject to the court’s review and determination as to reasonableness (see Matter of Thompson, 66 AD3d 1035 [2d Dept 2009]). This decision is in line with the legislative purpose behind EPTL 13-2.3 and SCPA 2112, as previously discussed, and is further *182 supported by public policy and judicial precedent regarding contingency fee agreements in matters relating to awards from the September 11th VCF, which frequently have been the subject of judicial scrutiny (see e.g. Matter of Gomez, 5 Misc 3d 534 [2004]; Matter of Thompson [upholding Surrogate’s discretion to review and determine reasonable fee even where retainer agreement exists]).
Courts have particularly raised issue with the propriety of contingency agreements for compensation in non-tort matters (see Matter of Betlem, 2 Misc 3d 1012[A], 2004 NY Slip Op 50308 [U] [Sur Ct, Monroe County 2004], affd 19 AD3d 1066 [4th Dept 2005] [addressing propriety of a contingency agreement and relative risk assumed by an heir finder seeking a lost legatee]). Given the lack of risk assumed, the likelihood of success, and the predictability of the value of funds to be recovered here, coupled with this record, which necessarily required the attorney-in-fact to expend significantly less efforts than those expended in circumstances where status as a distributee remains to be proved, the court questions the reasonableness of a 15% contingency fee[8] (see Matter of Lohausen, 36 Misc 3d 1209[A], 2012 NY Slip Op 51233[U], *4 [Sur Ct, Queens County 2012] [“an agreed fee may be disallowed in spite of a percentage retainer agreement where the amount of the fee becomes large enough to be out of all proportion to the value of the professional services that were rendered”]; Matter of Gomez).
On the papers now before the court, Mr. Diliberto has failed to provide information or documentation to substantiate whether the services performed here merit compensation in the amount of 15% of the net funds to which these three distributees are entitled. Indeed, the only description that he has provided recites that he prepared the pleadings, filed the papers with the court, served and prepared affidavits of service on two respondents, and appeared on the return date on behalf of his clients. These are routine tasks on straightforward and identical petitions and Mr. Diliberto provides no documentation of the time spent to complete these tasks. Nor does Mr. *183 Diliberto present any information about any other services he or his firm purport to have performed for the distributees. Moreover, the fact that the legislature, in Abandoned Property Law § 1416, deemed agreements allowing for fees exceeding 15%, inclusive of legal fees, invalid does not render a retainer agreement that complies with that limit per se enforceable or insulated from review.
This is not to say that Mr. Diliberto’s services were without value. The distributees believe that without his efforts they would never have known about or moved toward receiving these funds. The question before this court, however, remains the reasonableness of compensation for services rendered to these three distributees by their attorney-in-fact. Accordingly, Mr. Diliberto is directed to file and serve an affidavit detailing his services, along with any contemporaneous time records or other information relevant to services performed, and itemizing all expenses and disbursements, on or before October 24, 2014, with a hearing to be held on the issue of compensation on November 13, 2014, at 10:00 a.m., unless all parties consent to the court’s determination of this matter on the written submissions.
Conclusion
For the foregoing reasons, and in the interests of justice, the unopposed relief sought in the petitions before the court is granted to the extent of directing the payment of any money held for the benefit of each of these three distributees by the Comptroller to Mr. Diliberto. The court further directs Mr. Diliberto to immediately distribute to each distributee a sum equal to 85% of their respective funds. Finally, Mr. Diliberto is directed to hold the remaining 15% of each distributee’s share in escrow pending further determination and order of this court as to the reasonable compensation to which Mr. Diliberto is entitled.

. The VCF award letter, dated January 26, 2004, provided the following distribution plan: Bryanna Holland: $110,738.22; Dujon Holland: $303,427.21; Ty-Shawn Ward: $292,015.22; and Trent Ward: $248,260.22.

. This decision, and an earlier withdrawn decision dated April 29, 2005, express the court’s gratitude to the PA, her counsel, and the guardian ad litem appointed to represent the interests of the four minor distributees for their services and for waiving their respective fees in the accounting proceeding.

. These three distributees share a mother.

. The court is sensitive to and mindful of the unfortunate series of events that resulted in these distributees having no access to the funds for their benefit for the past nine years.

. Additional funds had been deposited on or about July 3, 2006, for the benefit of each of these distributees in the approximate amount of $8,334.

. According to Abandoned Property Law § 1416 (3) (d), for an agreement for abandoned property location services to be valid, such agreement must include “in a clear and conspicuous manner, and in at least twelve-point boldface type” a disclosure, the text of which is included in the statute. Information about how an individual might obtain abandoned funds held by New York State directly from the Comptroller without paying a fee and the phone number established by the Comptroller for receiving inquiries regarding unclaimed funds or the website address of the Comptroller, are part of the required disclosure.

. To the extent that Mr. Diliberto or DPR assert an entitlement under these agreements to compensation for services performed for these three distributees other than those Mr. Diliberto claims are exempt from the Abandoned Property Law § 1416 requirements, as to those nonlegal services, the agreements are invalid and unenforceable (see Greenpoint Bank v Criscione, 23 Misc 3d 1106[A], 2009 NY Slip Op 50604[U] [Sup Ct, Kings County 2009]). Additionally, it should be noted that even if the DPR agreements were valid and enforceable, the 15% cap on compensation imposed by section 1416 has been found to be inclusive of any attorneys’ fees (id. at *4; Matter of Kelley, 26 Misc 3d 621, 623 [Sur Ct, Westchester County 2009]).

. It bears noting that many attorneys and entities providing services related to awards from the Victim Compensation Fund, and more broadly legal services in the aftermath of the attacks on September 11, 2001, waived fees and compensation or sought significantly reduced compensation for related services rendered (see Matter of Barbosa, 4 Misc 3d 1010[A], 2004 NY Slip Op 50812[U] [Sur Ct, Bronx County 2004]; see also Matter of Gomez; Matter of Thompson).